Filed 4/29/25  In re L.J. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re L.J. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br>v.<br>M.J.,<br><br>        Defendant and Appellant. | A171554<br><br>(San Francisco County Super. Ct. Nos. JD24-3071 & JD24-3072) |

In these dependency actions, M.J. (Mother) appeals the juvenile court's orders assuming jurisdiction over her two children, L.J. and M.B. (collectively, Minors), under Welfare and Institutions Code section 300.[1] Mother does not challenge the juvenile court's jurisdiction, but argues solely that findings regarding alcohol use and domestic violence are not supported by substantial evidence.  We affirm.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

In April 2024, the San Francisco Human Services Agency (Agency) filed section 300 petitions seeking to detain then-11-month-old L.J. and newborn M.B. from Mother and Minors' respective fathers. As relevant here, the petitions alleged Mother had substance abuse issues impeding her ability to care for Minors.[2] Amended petitions later added an allegation that Minors were also at risk due to a history of domestic violence between Mother and M.B.'s father (Father).

According to the Agency's detention report, Minors both tested positive for methamphetamine at birth. Mother had been investigated by a different county after L.J.'s birth; the county closed that referral but noted Mother " 'has a history of drug use' " and " 'continues to minimize it.' " Nurses observed that Mother was not attentive to M.B. while in the hospital after his birth. Mother told the Agency she used methamphetamine when she was homeless in 2022, but stopped after she got housing. Mother also said she drank excessively before her pregnancy with L.J. but stopped because she did not like the way it made her feel. Mother denied any current drug use, said her last use was in 2022, and said she had no idea how either Minor tested positive for methamphetamine.

The Agency allowed M.B. to be discharged to Mother and Father on the condition that they stay with the maternal grandmother, who agreed to supervise them at all times. The following day, the Agency learned that Mother and Father brought M.B. in for a pediatric checkup without the maternal grandmother. At the checkup, the parents said M.B. had turned purple on two occasions, but were not able to answer follow-up questions.

---

[2] We recite only those background facts relevant to the narrow issues asserted on appeal.

Medical staff advised them to take M.B. to the emergency room but the parents did not do so, and they cancelled a follow-up pediatric visit.  When the Agency contacted the parents to discuss concerns about M.B.'s health and their noncompliance with the agreed-on plan of supervision by the maternal grandmother, the parents refused to meet with the Agency.  Mother told the Agency the maternal grandmother had kicked her out of the house.  The juvenile court ordered Minors detained.

In a May 2024 report, the Agency stated Mother was currently on probation for a 2021 conviction for driving under the influence (DUI), and she also had a 2016 DUI.  Mother's probation officer told the Agency she had failed to comply with her probation conditions, which included drug testing and a drug treatment program.  The Agency referred Mother to drug testing and a residential treatment program, but at the time of the report, Mother had neither tested nor entered treatment.

The Agency also reported that Mother and Father had a history of domestic violence, with the first documented incident in 2018, when Father pulled Mother downstairs by her hair and attempted to choke her.[3]  An emergency protective order issued, but a few months later, police were called after Father choked Mother.  Father and Mother said they had been living together for a month despite the restraining order.  In 2020, Father was convicted twice of battery on a spouse and, in 2021, Father was convicted of corporal injury on a spouse.  The Agency reported that the last incident of domestic violence was in 2022, and Father was convicted at that time of

---

[3] A police report from this incident submitted with a subsequent Agency report included a neighbor's statement that he saw Father dragging Mother down the stairs by her hair, and an officer's statement that there was a broken mirror and broken furniture in the parents' house.

violating a protective order and sentenced to prison for 16 months. An active restraining order protecting Mother from Father was in place, expiring in December 2024.

In July and August 2024 addendum reports, the Agency said that in June, Mother entered two drug treatment programs but left both within days. Drug tests during these brief stays were positive for amphetamine and methamphetamine. When the Agency asked Mother about the history of domestic violence with Father, she denied any physical violence and stated the documented incidents were "blown out of proportion[]." In early July, Mother told the Agency she had asked Father to leave and he was no longer living with her. Mother's attorney subsequently told the Agency that Mother was looking for a domestic violence class.

Mother testified at the August 2024 jurisdiction/disposition hearing. She testified she started using methamphetamine two years earlier, but stopped using during both pregnancies except for one relapse each. She last used the month before the hearing; when she used after L.J. was born, she left him with her mother; and she did not think she needed help with substances. With respect to alcohol, Mother testified she drank alcohol daily before she stopped drinking about a year after her second DUI. Mother testified that, "[a]s of now," she did not intend to live with Father when the active restraining order expired. She admitted there was domestic violence in their relationship in the past, she had never received domestic violence counseling, and "[p]ossibly" she could use such counseling.

The trial court sustained the allegations of the amended petitions. The court emphasized Mother's lack of credibility and failure to acknowledge her substance abuse problem: "We have a history of her denying any use, denying a drug problem, denying relapses . . . . [¶] We have a restraining order that is

4

repeatedly violated. We have a problem following court orders. We have the efforts of not being able to follow the DUI orders. All of these things seem to have the same underlying root cause, which is an untreated fairly well unacknowledged substance abuse addiction."

With respect to disposition, Minors' counsel expressed concern that the Agency's proposed case plan did not include domestic violence services and stated his intention to "ask the Court to amend the service plan to include domestic violence counseling." The court agreed "it is important to do that," and ordered the Agency to add domestic violence counseling to the case plan.

DISCUSSION

"On appeal, '[a] dependency court's jurisdictional findings are reviewed under the substantial evidence test. [Citation.] Under this test, we resolve all conflicts in the evidence, and indulge all reasonable inferences that may be derived from the evidence, in favor of the court's findings.' " (*In re Madison S.* (2017) 15 Cal.App.5th 308, 318.)

The juvenile court sustained the petitions' allegation that there was a substantial risk to Minors because of Mother's substance abuse issues. Several of the supporting facts described Mother's methamphetamine use and the impact on Minors. Additionally, the petitions included the following supporting fact: "[Mother] reported that she drank excessively prior to the birth of [L.J.] and then stopped as she did not like the way it made her feel." (Capitalization altered.) Mother does not dispute the factual accuracy of this statement, nor does she dispute that multiple other facts support this jurisdictional finding. Mother's sole complaint is that her past drinking does not provide support for the jurisdictional finding because the juvenile court took "at face value" her testimony that she was no longer drinking. We

5

disagree.[4]  "Although 'the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection. [Citations.] . . . 'Facts supporting allegations that a child is one described by section 300 are cumulative.'  [Citation.]  Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.' " (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)  While the fact of Mother's past alcohol use would not be sufficient alone to support the jurisdictional finding, it was properly considered by the juvenile court as part of Mother's ongoing history of substance abuse.

Mother also challenges the following additional jurisdictional finding: "The child is at risk of serious physical harm because [Mother and Father] have an extensive history of domestic violence.  A criminal protective order was issued in 2018 protecting [Mother] from [Father] and another criminal protective order was issued in 2021.  The 2021 [criminal protective order] is still in effect until December 2024.  The parents have remained together in a relationship in violation of those orders.  Mother has acknowledged the domestic violence, but minimizes it." (Capitalization altered.)  Again, Mother does not dispute the factual accuracy of the finding, but argues it cannot support jurisdiction because there is no substantial evidence of current

_____

[4] As the Agency contends, we need not address this contention because Mother does not challenge the overall jurisdictional finding.  (See *In re D.P.* (2023) 14 Cal.5th 266, 283 [" ' "[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate" ' "].)  We nonetheless exercise our discretion to consider the challenge.

domestic violence. Mother seeks to strike both this finding and the domestic violence counseling ordered as part of her case plan.[5]

Substantial evidence supports the juvenile court's finding that the risk of domestic violence is ongoing. It is undisputed that Mother and Father have a years-long history of domestic violence. While the last known incident was in 2022, this was followed by Father being sentenced to prison for 16 months. The juvenile court stated that Father "has served his time in prison on this count, presumably has been rehabilitated and acknowledges and understands what he did wrong," but further noted that the lack of a known incident in the past "two, two and a half years" was "not a long track record." Mother has minimized the domestic violence and never received domestic violence counseling or treatment. We affirm the juvenile court's orders sustaining this allegation and directing domestic violence counseling.

## DISPOSITION

The orders are affirmed.

SIMONS, Acting P. J.

We concur.

BURNS, J.
CHOU, J.

(A171554)

---

[5] Because Mother has "demonstrated a specific legal or practical consequence that will be averted upon reversal, . . . merits review is required." (*In re D.P., supra,* 14 Cal.5th at p. 283.)

7